(30 Misc. Rep. 561.)

PEOPLE ex rel. CUNLIFFE v. CRAM et al., Commissioners.

(Supreme Court, Trial Term, New York County. February, 1900.)

1. MUNICIPAL EMPLOYES—DISCHARGE—UNION SOLDIERS.

Laws 1894, c. 716, provides that Union soldiers or sailors engaged in public service shall be removed only for incompetency and conduct inconsistent with their positions. Chapter 478, relating to the department of docks, provides that the work done thereunder shall be by contract, after advertising, except repairs not exceeding $500. Plaintiff, a Union veteran engaged in painting in the department, for which he was paid per diem, was discharged without a hearing, and with no allegation as to incompetency or inconsistent conduct. His work consisted principally of repairs in the way of painting, not amounting in value to $500. *Held* that, his work being repairs not exceeding $500, it could be done by one paid per diem; hence his discharge was improper.

2. SAME—MANDAMUS.

Mandamus sought in 1894 against the commissioners of docks, to compel reinstatement of a veteran, without complying with Laws 1894, c. 716, providing for such removal only on the grounds of incompetency and conduct inconsistent with the position, does not abate on removal of that board, but will lie against the new board appointed in their stead without their substitution in place of the old board, such proceeding being brought to enforce the performance of an official corporate duty resting on the officer as such, and not one involving the exercise of discretion.

3. SAME—COMMISSIONERS OF DOCKS—CORPORATION COUNSEL—NOTICE.

Proceedings begun in 1894 against the commissioners of docks to compel reinstatement of an employé in the public service were continued against the new commissioners appointed on removal of the old board, without substitution being made, and, the corporation counsel having charge of the proceedings against the board from their initiation, it is not necessary to give the new commissioners notice, their acts being corporate acts, and, the corporation counsel being legal adviser of the department, notice to him of a desire to continue the proceeding against the new commissioners is sufficient.

4. SAME—SUBSTITUTION.

Mandamus begun in 1894 against the commissioners of docks, to compel reinstatement in the public service of an employé, was continued against the new commissioners appointed after the removal of the old board without substitution being made. *Held*, that it was unnecessary to make substitution, as Code Civ. Proc. §§ 1929, 1930, requiring substitution of successors in office in actions against county, town, and municipal officers, relate only to Id. §§ 1926, 1927, in actions against school trustees, overseers of the poor, and county supervisors.

Mandamus by the people, on relation of William H. Cunliffe, against J. Sergeant Cram and another, as commissioners of docks of the city of New York. Judgment for plaintiff.

Shiland & Honeyman (Herbert B. Shoemaker, of counsel), for relator.

John Whalen, Corp. Counsel (Terence Farley, of counsel), for respondents.

LAWRENCE, J. When this case was before the appellate division (34 App. Div. 313, 54 N. Y. Supp. 355) it was held that the effect of the act of 1894 (chapter 716) was not merely to bring veterans, when engaged in state work done in cities, within the purview of the general statute, but that the same covers all public works of the cities of the state, whether municipal or governmental, and was intended to

extend the protection afforded to veteran appointees by chapter 577 of the Laws of 1892, relating to cities, to all employés, whether in receipt of a definite salary or compensation for their labor by daily wages; that the two acts were in pari materia, and should be construed together; and that the act of 1892 limited the power of removal of salaried appointees to cause shown after a hearing had, while the act of 1894 limited such "cause" to incompetency and conduct inconsistent with the position. There is no dispute that the relator is a Union veteran, nor that for a period of nearly 20 years he was in the employ of the department of docks as a painter, and that the duties assigned to him were properly performed. In the return of the respondents it is alleged that the relator was removed because there was no more work for him to do in the department; that at such time the necessity for the employment of painters in said department had ceased; and that by reason of and since the passage of chapter 478 of the Laws of 1894, amending section 714 of the consolidation act, they have been compelled to do all of their work, including painting, by contract, instead of hiring men and paying them to do the work, as they had a right to do, prior to the passage of said enactment. It is further denied that there is now any work for painters in the department of docks, and that no such work has been done since the discharge of the relator. On the question of fact as to the performance for the respondents of painters' work, after the relator's discharge, I think that the evidence clearly shows that such work has been done. The evidence also establishes that at the time of the relator's discharge he was engaged upon a particular piece of work which was not completed, and which would have required 10 days more for its completion. Unless, therefore, there is something in the act of 1894, commonly called the "Saxton Act," which required such work to be done by contract, and not by employés paid per diem, the relator must be deemed to have made out this part of his case. That act requires that the work of construction to be done under the department shall be done under contract made after proposals for doing the work have been advertised for, and that the contract shall be awarded to the lowest responsible bidder complying with the plans and specifications. Conceding that this act embraces such work as the relator was called upon to do, and that such work can properly be said to relate to the construction of wharf structures, etc., it is expressly provided in the act that "repairs may be made without advertising and letting the work by contract, where the cost of such repairs shall not exceed $500." The work of the relator seems generally to have consisted of repairs in the way of painting, not extensive in their character nor amounting in value to $500. It is true that he was also an expert painter, and that he was appointed an inspector of painting, but the work mainly done by him was general painting, and the resolution of removal designates the three persons removed, including the relator, as painters. As the case stands, then, on the evidence, the relator, who was an honorably discharged Union veteran, was discharged from the employment of the dock department without a hearing, and without any allegation that he was incompetent to perform the duties of

his position, or that his conduct, in the language of the statute, was "inconsistent with the position" held by him. It was not within the power of the commissioners of docks to do this. People v. Cram, 34 App. Div. 313, 54 N. Y. Supp. 355. See particularly remarks of Mr. Justice Barrett, at page 316, 34 App. Div., and page 357, 54 N. Y. Supp.

There remains one question upon which I have entertained great doubts, in consequence of the decision of the court of appeals in People ex rel. Broderick v. Morton, 156 N. Y. 136, 50 N. E. 791, 41 L. R. A. 231. Since this proceeding was commenced, the respondents, who were in office at the time of its commencement, have been removed, and new commissioners appointed in their places. Those commissioners in turn have been superseded by the present board. Mr. Cram is the only commissioner in the present board who was a commissioner when this proceeding was initiated. He went out of office with his brother commissioners, but has now been appointed one of the new board under the provisions of the charter of Greater New York. It is claimed that upon the removal of the old board this proceeding abated, and that it cannot be continued against the present board. In the Broderick Case, supra, it was held that:

"Where, after the issuance of an alternative writ of mandamus to the persons then holding the offices of governor, lieutenant governor, and speaker, to compel them, as the trustees of public buildings and the superintendent of public buildings, to reinstate a veteran in employment, on the ground that he had been removed in violation of chapter 716 of the Laws of 1894, a peremptory writ is denied, and the appellate division reverses the denial, and, the term of office of the persons proceeded against as trustees having expired, orders the peremptory writ to issue to the governor, lieutenant governor, and speaker then in office, without notice to and substitution of such new officials in the proceeding, the order is not sustainable."

This case seems at first blush to be conclusive of the case at bar, it being conceded that there has been no substitution of the present board of dock commissioners for the old board. And yet, upon a full examination of the case, I am of the opinion that the court did not intend to apply the rule laid down to the case of the action of a municipal corporation, or one of the component parts thereof, in the appointment or removal of an officer or employé. The Broderick Case was rested, as to the governor, upon the point that as an ex officio trustee of public buildings he was not subject to mandamus, even as to the performance of ministerial duties. It was, however, distinctly held that, as the terms of office of the lieutenant governor and speaker had expired, the writ would not go against them. I do not regard this case as controlling beyond the precise state of facts and the particular officers as to which it was decided. It does not overrule in terms such cases as People v. Champion, 16 Johns. 61; People v. Collins, 19 Wend. 56; People v. Supervisors of Chenango Co., 8 N. Y. 317; and People v. Maher, 64 Hun, 408–417, 19 N. Y. Supp. 758. In People v. Champion, 16 Johns. 61, Justice Spencer, in delivering the opinion of the court, says:

"It has been urged that, non constat, the commissioners to whom the alternative mandamus was directed are now in office, and that, if they are not, the peremptory mandamus will be unavailing. It was not necessary, in the first

instance, to issue the writ to any person by name; for this is not a proceeding against any individual until an attachment issues. The relator might omit the names, and proceed against the commissioners of the town, whoever they may be; and if, as commissioners, they disobeyed our mandate, they would incur a personal responsibility."

In People v. Collins, 19 Wend. 56, the court say:

"The obligation sought to be enforced devolves on no particular set of commissioners, and no right is in question which will expire within the year. The duty is perpetual upon the present commissioners of Smyrna and their successors, and the peremptory writ may be directed to and enforced upon the commissioners of the town generally. To say otherwise would be a sacrifice of substance to mere form."

In People v. Maher, 64 Hun, 417, 19 N. Y. Supp. 758, the common council of the city of Albany passed a resolution which became a law, requesting the mayor to direct the city engineer to send a written notice to the owners of a certain building requiring them to remove the porch thereof, and, in case of their neglect or refusal to do so, to cause its removal according to the charter. The mayor, who was required by the charter to be vigilant and active in requiring ordinances to be enforced, refused to act under this resolution. An alternative mandamus thereupon issued at the suit of an adjacent landowner injured by the existence of the porch, and upon the return thereto a final order requiring the removal of the porch was made against the mayor's successor in office, the original defendant having gone out of office. And it was held that after the common council had passed the resolution it was no longer discretionary with the mayor whether or not he would act in the matter, and that a mandamus was the proper means to compel him to send the written directions to the city engineer contemplated by the statute; that the functions of the mayor were continuous, and did not end with an official term, and, as the writ was sought to secure a public improvement and the performance of a public duty, the writ would be regarded as having issued against the mayor of the city of Albany, and not simply against the person who was the incumbent of that office when the proceeding was commenced. The principle to be deduced from these cases seems to be this: that where the proceeding is brought to enforce the performance of an official corporate duty resting upon the officer as such, and not involving the exercise of discretion, mandamus will lie, and the proceeding will not abate by the expiration of the term of the incumbent of the office, and the performance of the duty will devolve upon the successor. In this case the burden of showing the relator's "incompetency" or "inconsistent conduct" was upon the commissioners of docks. 2 Laws 1894, p. 1797. They have failed to make that proof. Under the statute the relator was therefore entitled to reinstatement, no discretion being vested in the commissioners to reject him. I am therefore of the opinion that a case for the reinstatement of the relator has been clearly made out.

It is said, however, that no notice has been given to the new board. It must be remembered that the present department of docks and ferries, which was created by the charter of Greater New York (chapter 378, Laws 1897), is one of the administrative departments of the city corporation. The acts which it performs are corporate acts. It

is part and parcel of the corporation. The corporation counsel is the head of the law department, and he is the legal adviser of the mayor, the municipal assembly, and the various departments and officers. He has had charge of these proceedings from their initiation, and notice to him, if notice of a desire to continue against the new commissioners is requisite, is, I think, sufficient. Sections 1926 and 1927 of the Code of Civil Procedure relate only to trustees of school districts, overseers of the poor of a village or a city, county superintendent or superintendents of the poor, or the supervisors of a county upon a contract lawfully made with those officers or their predecessors in their official capacity, and it is only to those officers that sections 1929, 1930, Id., relating to the substitution of successors in office in actions or proceedings against certain county, town, and municipal officers, apply. My conclusion, therefore, is that the relator is entitled to a judgment directing his reinstatement as prayed for by him.

Judgment accordingly.